**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AMPEREX TECHNOLOGY LIMITED, | |
| Plaintiff, | Civil Action No. 2:21-cv-08461-KM-MF |
| v. | Judge:  Honorable Kevin McNulty |
| MAXELL, LTD. and MAXELL HOLDINGS, LTD., | Motion Date:  July 6, 2021 |
| Defendants. | |

**SPECIALLY APPEARING DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

SCARINCI HOLLENBECK
1100 Valley Brook Avenue
P.O. Box 790
Lyndhurst, New Jersey  07071
201.896.4100 Telephone
201.896.8660 Facsimile

ATTORNEYS FOR SPECIALLY
APPEARING DEFENDANTS MAXELL,
LTD. AND MAXELL HOLDINGS, LTD.

*Of Counsel and On the Brief:*

*Robert E. Levy*
*Hilary L. Preston*
*Eric J. Klein*
*Jeffrey T. Han*
*Erik Shallman*

US 8038286

## TABLE OF CONTENTS

I.    Introduction ............................................................................................................ 1

II.   Factual Background ................................................................................................ 3

    A.    ATL Fundamentally Misunderstands the Relationships Among Maxell
        Entities. ........................................................................................................... 3

        1.    Maxell and Maxell Holdings are Japanese Companies with No
               Relevant Presence in New Jersey. .............................................. 3

        2.    Non-Party MCA Has No Involvement with the Maxell LIB
               Patents, the Patented Technology, or the Parties' Dispute. ........ 4

        3.    ATL Ignores the More Relevant Maxell Subsidiary in the United
               States, Which is Based in Texas. ................................................ 5

    B.    Defendants Sought in Good Faith to License the LIB Patents to ATL. ................. 6

        1.    Defendants and ATL Begin Negotiations. ................................... 6

        2.    The Parties' Negotiations Continued for a Year but Did Not Result
               in a License. ............................................................................... 6

    C.    Defendants Make a Final Overture to ATL in an Effort to Reach a
        Licensing Deal. ............................................................................................... 7

    D.    ATL Files an Anticipatory Declaratory Judgment Action and Maxell
        Holdings Files the Texas Action. .................................................................... 7

    E.    ATL Files Its Amended Complaint But Fails to Serve It, Forcing
        Defendants to File the Motion to Dismiss. ...................................................... 8

III.  Argument ................................................................................................................ 8

    A.    Once Served, ATL's Amended Complaint Superseded the Original
        Complaint and Mooted the Original Motion to Dismiss. ...................................... 8

    B.    Pursuant to 28 U.S.C. § 2201 and Equitable Exceptions to the First-to-File
        Rule, the Court Should Decline To Exercise Jurisdiction Over This
        Inappropriate, Anticipatory Declaratory Judgment Action. ................................ 10

        1.    ATL's Action Does Not Serve the Objectives of the Declaratory
               Judgement Act and is a Classic Anticipatory Suit Designed to
               Deny Defendants their Choice of Forum. ................................... 11

        2.    ATL Interfered With Ongoing Negotiations By Feigning
               Cooperation. ............................................................................... 12

        3.    ████████████████████████████████████ ............................ 14

        4.    Correcting the Procedural Deficiencies in ATL's Action Will
               Cause Unnecessary Delay. ......................................................... 14

        5.    The Convenience Factors and the Interests of Judicial Efficiency
               Favor the Western District of Texas. .......................................... 15

i

C.    Pursuant to Rule 12(b)(2), This Court Should Dismiss for Lack of Personal Jurisdiction Over Defendants. ............................................. 17

    1.    This Court Lacks General Jurisdiction Over Defendants. ........................ 18

    2.    This Court Lacks Specific Jurisdiction Over Defendants Because ATL Has Not Alleged a Single Relevant Contact in this District. ........... 22

D.    Pursuant to Rule 12(b)(5), ATL's Attempted Service of Process on Defendants was Ineffective. ................................................................... 26

E.    In the Alternative, the Court Should Transfer this Action to the Western District of Texas Pursuant to 28 U.S.C. § 1404(a). .............................. 27

    1.    Venue Is Proper in the Western District of Texas. .................................. 28

    2.    The Balance of the Relevant Public and Private Factors Favors Transfer to the Western District of Texas. ................................................ 28

IV.    Conclusion ............................................................................................................. 30

ii

# **TABLE OF AUTHORITIES**

**Cases**

*AstraZeneca AB v. Mylan Pharms., Inc.,*
72 F. Supp. 3d 549 (D. Del. 2014),
*aff'd sub nom. Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*, 817 F.3d 755 (Fed.
Cir. 2016) .................................................................................................................. 20

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.,*
566 F.3d 1012 (Fed. Cir. 2009) ................................................................................ 18

*Avocent Huntsville Corp. v. Aten Int'l Co.,*
552 F.3d 1324 (Fed. Cir. 2008) ......................................................................... 23, 25

*Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.,*
444 F.3d 1356 (Fed. Cir. 2006) ................................................................................ 25

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cty.,*
137 S. Ct. 1773 (2017) .............................................................................................. 18

*Celgard, LLC v. SK Innovation Co.,*
792 F.3d 1373 (Fed. Cir. 2015) ................................................................................ 20

*Cephalon, Inc. v. Sun Pharm. Indus., Inc.,*
No. CIV.A. 11-5474, 2011 WL 6130416 (D.N.J. Dec. 7, 2011) ............................. 27

*Commc'ns Test Design, Inc. v. Contec, LLC,*
952 F.3d 1356 (Fed. Cir. 2020) ....................................................... 10, 11, 12, 13

*Daimler AG v. Bauman,*
571 U.S. 117 (2014) ............................................................................................ 18, 19

*Dewey v. Volkswagen AG,*
558 F. Supp. 2d 505 (D.N.J. 2008) ...................................................................... 21, 26

*E. Wind Indus., Inc. v. United States,*
No. CIV. 97-2615 (MLC), 2003 WL 21153263, (D.N.J. Mar. 27, 2003) (Cooper, J.),
*aff'd in part, rev'd in part* (on other grounds), 108 F. App'x 723 (3d Cir. 2004) ...................... 9

*EMC Corp. v. Norand Corp.,*
89 F.3d 807 (Fed. Cir. 1996) ............................................................................. 10, 12

*Genentech, Inc. v. Eli Lilly & Co.,*
998 F.2d 931 (Fed. Cir. 1993),
*abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ............. 10, 15

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
564 U.S. 915 (2011) .................................................................................................. 18

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.,*
824 F.2d 953 (Fed. Cir. 1987) .................................................................................. 11

*Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.,*
988 F.2d 476 (3d Cir. 1993) ..................................................................................... 26

iii

*Horowitz v. AT&T Inc.*,
    No. 3:17-CV-4827-BRM-LHG, 2018 WL 1942525 (D.N.J. Apr. 25, 2018) ......................... 20

*In re HTC Corp.*,
    889 F.3d 1349 (Fed. Cir. 2018) ................................................................................. 28

*In re Link_A_Media Devices Corp.*,
    662 F.3d 1221 (Fed. Cir. 2011) ................................................................................. 27

*Inamed Corp. v. Kuzmak*,
    249 F.3d 1356 (Fed. Cir. 2001) ................................................................................. 22

*Insituform Techs., Inc. v. CAT Contracting, Inc.*,
    385 F.3d 1360 (Fed. Cir. 2004) ................................................................................. 20

*Int'l Controls Corp. v. Vesco*,
    556 F.2d 665 (2d Cir. 1977) ....................................................................................... 9

*Iowa State Univ. Rsch. Found., Inc. v. Greater Continents Inc.*,
    81 F. App'x 344 (Fed. Cir. 2003) ............................................................................. 18

*J & H Int'l v. Karaca Zucciye Tic. San A.S.*,
    No. 2:10-CV-03975 SDW, 2012 WL 4742176 (D.N.J. Oct. 3, 2012) ...................... 27

*Jumara v. State Farm Ins. Co.*,
    55 F. 3d 873 (3d. Cir. 1995) ....................................................................... 27, 28, 29

*Levy v. Jaguar Land Rover N. Am., LLC.*,
    No. CV 19-13497, 2020 WL 563637 (D.N.J. Feb. 4, 2020) ................................... 21

*Malik v. Cabot Oil & Gas Corp.*,
    710 F. App'x 561 (3d Cir. 2017) ............................................................................... 19

*Maxchief Invs. Ltd. v. Wok & Pan, Ind., Inc.*,
    909 F.3d 1134 (Fed. Cir. 2018) ......................................................................... passim

*Maxell Holdings, Ltd. v. Amperex Technology Limited*,
    No. 6:21-cv-00347 (W.D. Tex. filed Apr. 8, 2021) .................................................. 1

*Merritt v. Fogel*,
    349 F. App'x 742 (3d Cir. 2009) ............................................................................... 10

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*,
    890 F.3d 995 (Fed. Cir. 2018) ................................................................................. 22

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
    518 F.3d 897 (Fed. Cir. 2008) ................................................................... 10, 11, 15

*Mills v. Ethicon, Inc.*,
    406 F. Supp. 3d 363 (D.N.J. 2019) .......................................................................... 26

*Mondis Technology Ltd. v. LG Electronics Inc. et al.*,
    No. 2:15-cv-04431-SRC-CLW (D.N.J. filed June 21, 2014) ....................... 16, 19, 24

*Nicholas v. Saul Stone & Co. LLC*,
    224 F.3d 179 (3d Cir. 2000) ..................................................................................... 18

iv

*One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc.*,
   987 F. Supp. 317 (D.N.J. 1997) ................................................................................. 12, 17, 28

*Pat. Incentives, Inc. v. Seiko Epson Corp.*,
   No. CIV.A. 88-1407 WL 92460 (D.N.J. Sept. 6, 1988), *aff'd*, 878 F.2d 1446 (Fed. Cir.
   1989) ...................................................................................................................................... 20, 21

*Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*,
   669 F. Supp. 2d 613 (W.D. Pa. 2009) ........................................................................ 11, 12, 14

*Reddy v. MedQuist, Inc.*,
   No. CIV 06-4410(RBK/AMD), 2009 WL 2413673 (D.N.J. Aug. 4, 2009) ............................ 26

*Seltzer v. I.C. Optics, Ltd.*,
   339 F. Supp. 2d 601 (D.N.J. 2004) ..................................................................................... 20

*W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*,
   712 F.3d 165 (3d Cir. 2013) ................................................................................................... 9

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*,
   848 F.3d 1346 (Fed. Cir. 2017) .......................................................................... 22, 24, 25, 26

**Statutes**

28 U.S.C. § 1391(c)(3) ..................................................................................................................... 28

28 U.S.C. § 1404(a) ............................................................................................................. 1, 27, 28

28 U.S.C. § 2201 .................................................................................................................... 1, 30

28 U.S.C. § 2201(a) ......................................................................................................................... 10

**Rules**

Fed. R. Civ. P. 12(b)(2) ...................................................................................... 1, 18, 26, 30

Fed. R. Civ. P. 12(b)(5) ........................................................................................ 1, 27, 30

Fed. R. Civ. P. 19 ............................................................................................................. 16

Fed. R. Civ. P. 4(f)(1) ......................................................................................................... 8

Fed. R. Civ. P. 5(a) ............................................................................................................. 9

Fed. R. Civ. P. 5(a)(1)(B) .................................................................................................... 9

Loc. Civ. R. 5.2(14)(b)(1) .................................................................................................... 9

v

# I.  INTRODUCTION

Specially appearing defendants Maxell, Ltd. ("Maxell") and Maxell Holdings, Ltd. ("Maxell Holdings") (collectively, "Defendants") respectfully move the Court to dismiss plaintiff Amperex Technology Limited's ("ATL's") Amended Complaint for Declaratory Judgment ("Amended Complaint" or "Am. Compl.") (Dkt. No. 12) pursuant to (1) 28 U.S.C. § 2201, as an improper anticipatory declaratory judgment action; (2) Rule 12(b)(2), for lack of personal jurisdiction; and (3) Rule 12(b)(5), for lack of service of process.  In the alternative, Defendants request that the Court transfer the case pursuant to 28 U.S.C. § 1404(a) to the U.S. District Court for the Western District of Texas, where Defendants' patent infringement case against ATL involving the same dispute is pending.  *Maxell Holdings, Ltd. v. Amperex Technology Limited*, No. 6:21-cv-00347 (W.D. Tex. filed Apr. 8, 2021) (the "Texas Action").  Many of these same issues are raised by ATL's early-filed Motion to Enjoin Maxell's Later-Filed Infringement Action, *see* Dkt. No. 7, and Defendants incorporate herein by reference their concurrently filed opposition to that motion, *see* Dkt. Nos. 17, 19.

ATL's original Complaint (Dkt. No. 1, "Original Complaint" or "Or. Compl.") was filed, by ATL's own admission, in direct anticipation of Defendants' impending patent infringement suit after a year of licensing negotiations.  When faced with a deadline to enter a license, ATL led Defendants to believe that ATL was interested in ongoing negotiations.  Instead, ATL sprinted to this Court in a bad-faith, forum-shopping exercise.  The evidence of ATL's bad-faith rush are facially present in the Original Complaint's inaccurate and conclusory allegations as well as ATL's complete failure to observe the proper procedural formalities.  ATL misleadingly casts this action as a New Jersey dispute, but fails to allege any actual facts supporting that empty conclusion, nor even supporting personal jurisdiction over Defendants.  Nor could it; no event giving rise to this dispute occurred in New Jersey and none of the parties is a New Jersey resident.  Conversely,

1

Defendants have strong ties to Texas, where they maintain a research and development affiliate that works, among other things, on projects implementing lithium-ion batteries ("LIBs"), the same technology at issue here.

In the rush to force Defendants, both Japanese corporations, to appear in this Court, ATL tried to skip the Hague Service Convention and purported to serve Defendants through their New Jersey affiliate—non-party Maxell Corporation of America ("MCA"). But ATL alleged no facts to support that Defendants exercise extraordinary control over MCA, as is necessary under New Jersey law to sustain " service-by-subsidiary." This is because it cannot—MCA is affiliated with Defendants, but is a separate legal entity, far removed from the required agent or alter ego relationship. ATL's purported service was thus ineffective. Recognizing its failure, ATL belatedly filed a motion requesting the Court to allow alternative service via MCA or Defendants' counsel, essentially admitting its error. *See* Dkt. No. 10. Defendants already responded to ATL's inappropriate motion, *see* Dkt. No. 33, but note here that ATL's accusation of "surreptitious" service by Defendants is misplaced: on April 27, 2021, Maxell Holdings properly served ATL with service of process for the Texas Action pursuant to the Hague Service Convention, in stark contrast to ATL's disorganized and scatter-shot approach to commencing this action.

ATL curiously then filed the Amended Complaint on May 3, 2021—before Defendants had made any appearance in this case—but delayed three weeks, until May 25, 2021, before attempting to serve the Amended Complaint on Defendants via MCA and counsel, *see* Dkt. Nos. 36, 37, at which point the Original Complaint was superseded and Defendant's original Motion to Dismiss, *see* Dkt. Nos. 16, 18 ("Original Motion to Dismiss"), rendered moot. Defendants therefore file this Motion to Dismiss ATL's Amended Complaint, which suffers from the same flaws as the Original Complaint and is equally deficient.

US 8038286

Accordingly, Defendants respectfully request this Court not reward ATL for its bad-faith tactics and procedural gamesmanship, and instead grant Defendants' motion to dismiss this action. Alternatively, Defendants respectfully request that this Court transfer the action to the Western District of Texas, where the properly filed and served Texas Action is proceeding.

## II.  FACTUAL BACKGROUND

### A.  ATL Fundamentally Misunderstands the Relationships Among Maxell Entities.

#### 1.  Maxell and Maxell Holdings are Japanese Companies with No Relevant Presence in New Jersey.

Specially appearing defendants Maxell and Maxell Holdings are each Japanese corporations with a principle place of business at 1 Koizumi, Oyamazaki, Oyamazaki-cho, Otokuni-gun, Kyoto, Japan, and are not incorporated or registered to do business in New Jersey. *See* Dkt. No. 16-11 ("Maxell Decl.") ¶¶ 8-9, 14.  Defendants have no offices in New Jersey.  *Id.* ¶ 15.  Defendants do not own or lease any real property in New Jersey.  *Id.* ¶ 16.  Defendants maintain no bank accounts in New Jersey.  *Id.* ¶ 17.  Defendants do not pay taxes in New Jersey.  *Id.* ¶ 18.

Maxell is a wholly owned subsidiary of Maxell Holdings, which is the holding company of a global network of related affiliates (the "Maxell Group").  *Id.* ¶ 10.  The Maxell Group contributes to a sustainable society by innovating unique, original technologies.  *Id.* ¶ 11.  Since its founding in 1961 as Maxell Electric Industrial Co., Ltd., the Maxell Group has been a leading pioneer of various technologies and inventions, and a global manufacturer of products across multiple industries, including in energy storage and battery technologies.  *Id.* ¶ 12.  In fact, the Maxell Group was named after its very first product, the "**Max**imum Capacity Dry C**ell**," a high performance dry-cell battery.  *Id.* ¶ 13.  The Maxell Group has been on the forefront of every major battery development, and was an early leader in the commercialization and improvement of LIBs—the technology relevant in this action and the Texas Action.  *Id.*

3

**2. Non-Party MCA Has No Involvement with the Maxell LIB Patents, the Patented Technology, or the Parties' Dispute.**

Defendants' affiliate, non-party MCA, is a corporation organized under the laws of New Jersey with its principal place of business at 3 Garret Mountain Plaza, 3rd Floor, Suite #300, Woodland Park, NJ 07424-3352. *See* Dkt. No. 16-12 ("MCA Decl.") ¶ 5. Although MCA is a wholly owned subsidiary of Maxell, MCA is a separate corporate entity from either of Defendants. *Id.* ¶ 6. MCA's use of the "Maxell" name and logo is licensed by agreement from Maxell, for which MCA pays Maxell an annual royalty. *Id.* ¶ 8.

MCA operates as a distributor for Maxell in the United States and Canada, purchasing products from Maxell for resale. *Id.* ¶ 7. In addition, a significant portion of MCA's business involves selling "Maxell"-branded consumer goods that are sourced from third-party suppliers. *Id.*

MCA has separate corporate formation documents and by-laws, distinct from either Defendant. *Id.* ¶ 9. Only one of MCA's Directors overlaps with the board of directors of either Defendant. *Id.* ¶ 10. MCA does not share its headquarters with either of Defendants. *Id.* ¶ 11. MCA does not own or lease any real estate in common with Defendants. *Id.* ¶ 12. MCA maintains its own separate corporate records, bank accounts, and accounting systems. *Id.* ¶ 13. MCA pays its own payroll. *Id.* ¶ 14. MCA pays its own corporate taxes. *Id.* ¶ 15. MCA finances its operations through its own sales and revenues and is not reliant on financing from Defendants. *Id.* ¶ 16. MCA manages its own day-to-day activities and is not under the day-to-day control of either Defendant. *Id.* ¶ 17. MCA is not an agent of or otherwise authorized by Defendants to accept service of legal documents on Defendants' behalf. *Id.* ¶ 18.

Furthermore, MCA has zero involvement in the disputed patents and technology at the heart of this litigation. MCA was not involved in the invention or prosecution of the Maxell LIB Patents and has no ownership of, nor interest in, the Maxell LIB Patents. *Id.* ¶¶ 19-20. MCA has

4

no role in the enforcement or defense of any claims related to the Maxell LIB Patents. *Id.* ¶ 21. And, as ATL knows but conveniently omits in its pleadings, MCA took no part in any negotiations with ATL relating to the Maxell LIB Patents. *Id.* ¶ 22.

In short, MCA operates as an independent entity and has nothing to do with ATL's action.

### 3. ATL Ignores the More Relevant Maxell Subsidiary in the United States, Which is Based in Texas.

Since 2014, Maxell has had regular and continuous business in Texas and entered into a joint venture with a Texas company to work together on research and development related to various technologies, including LIBs, IoT, mobile, and media technologies. Maxell Decl. ¶ 34. Since the joint venture began, it has actively engaged in joint research and development of various technical projects. *Id.* As the joint venture developed, in 2017 Maxell decided to form a research and development affiliate, Maxell Research and Development America, LLC ("MRDA"), based in Marshall, Texas, which reflects Maxell's coordinated strategy to grow its business in Texas. *Id.* ¶ 35. MRDA's ongoing projects include, for example, research and development projects implementing LIB technology, including some of the inventions embodied by the Maxell LIB Patents, which Maxell hopes will be utilized in various devices in the future. *Id.* ¶ 36.

In furtherance of this work, MRDA rents office space and a research and development laboratory and machine shop in Marshall with hundreds of thousands of dollars' worth of technical equipment. *Id.* ¶ 37. Prior to the pandemic, Maxell engineers and executives regularly traveled to Marshall to meet and work to expand the research and development activities, business, and investments being made by Maxell, MRDA, and their business partners in Texas to further the companies' goals. *Id.* ¶ 38. Since June 2017, close to 20 individuals from Maxell have visited Marshall, some visiting multiple times and staying for as many as 10 days at a time. *Id.*

US 8038286

**B. Defendants Sought in Good Faith to License the LIB Patents to ATL.**

**1. Defendants and ATL Begin Negotiations.**

On March 27, 2020, Defendants sent ATL a letter describing its LIB patent portfolio, explaining the value of the patented technologies to ATL's current and future products, and offering to begin mutually beneficial licensing discussions. *See* Dkt. No. 16-3 at 1. The letter was sent from Defendants' Texas-based counsel to ATL in Hong Kong. *See id.*; Dkt. No. 18-1 ("Preston Decl.") ¶ 4.

**2. The Parties' Negotiations Continued for a Year but Did Not Result in a License.**

Defendants and ATL engaged in several negotiation meetings. *See* Preston Decl. ¶ 7. The parties held each meeting by videoconference, with representatives of Defendants attending from

6

Japan, representatives of ATL attending from Hong Kong or other locations in China, and counsel for the parties attending from Texas, Nevada, and California.  *Id.* ¶ 8.  ███████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███  MCA played no role in any of these discussions, as ATL well knows.  *See* MCA Decl. ¶ 22.

## C.  Defendants Make a Final Overture to ATL in an Effort to Reach a Licensing Deal.

On March 26, 2021, a year after Defendants' initial letter to ATL, Defendants' Texas-based counsel sent a new letter to ATL in Hong Kong expressing Defendants' continued willingness "to grant ATL a license to the Maxell LIB Patent Portfolio."  *See* Dkt. No. 16-5; Preston Decl. ¶ 11. But the letter clearly stated: "If [Defendants] and ATL are not able to enter into a licensing agreement by Friday, April 9, 2021, [Defendants] will be left with no choice but to pursue litigation."  Dkt. No. 16-5 at 3.  Counsel for Defendants and ATL then traded telephone calls and email messages.  ATL expressly requested another meeting to discuss Defendants' patents; in turn Defendants requested that ATL provide materials in advance of the meeting.  *See* Dkt. No. 18-3 at 1-2.  The last email message, on April 6, 2021, confirmed that ATL was serious about continuing negotiations, stating: "Thank you.  I will be in touch as soon as I can get the materials."  *Id.* at 1.

## D.  ATL Files an Anticipatory Declaratory Judgment Action and Maxell Holdings Files the Texas Action.

Unfortunately, that same evening, ATL filed the instant action seeking declaratory judgments of non-infringement of the Maxell LIB Patents.  *See generally* Or. Compl.  ATL admitted that it filed its Original Complaint because it believed that "Defendants will imminently file an action against ATL" if no agreement was reached by April 9, 2021.  *Id.* ¶¶ 27, 28; *see also* Dkt. No. 7-1 at 2; Dkt. No. 7-3 at ¶¶ 15, 16.  ATL then attempted on April 12, 2021, to serve the

US 8038286

summons and Original Complaint on Defendants via MCA by addressing the summons "c/o Maxell Corporation of America."  Dkt Nos. 5, 6.

After realizing that ATL had no intent to negotiate, Maxell Holdings on April 8, 2021, filed the complaint it had prepared in advance of the April 9 deadline in the Western District of Texas, asserting the Maxell LIB Patents against ATL.  Texas Action, Dkt. No. 1.  Maxell Holdings then transmitted the summons and complaint for the Texas Action to a solicitor in Hong Kong for service on ATL, pursuant to Rule 4(f)(1) and the Hague Service Convention; ATL was served on April 27, 2021.  *See* Preston Decl. ¶ 14.  Service was effected by personal service through a solicitor, a method prescribed by the internal laws of Hong Kong for civil matters, which is in accordance with Article 10(c) of the Hague Service Convention.  *See* Texas Action, Dkt. No. 6 at 4-5.

### E.  ATL Files Its Amended Complaint But Fails to Serve It, Forcing Defendants to File the Motion to Dismiss.

On May 3, 2021, the day Defendants' response to the Original Complaint was due and before Defendants had made any appearance in this case, ATL filed the Amended Complaint.  *See generally* Am. Compl.  As the Original Complaint remained operative until service of the Amended Complaint, Defendants filed their Motion to Dismiss the Original Complaint within the deadlines set by the Court and the Rules.  *See* Dkt. Nos. 16, 18.  ATL then delayed three weeks, until May 25, 2021, before attempting to serve the Amended Complaint on Defendants via MCA and counsel.  *See* Dkt. Nos. 36, 37.

### III. ARGUMENT

### A.  Once Served, ATL's Amended Complaint Superseded the Original Complaint and Mooted the Original Motion to Dismiss.

"An amended complaint only supercedes [sic] an original complaint once it is served."

*E. Wind Indus., Inc. v. United States*, No. CIV. 97-2615 (MLC), 2003 WL 21153263, at *2 (D.N.J.

Mar. 27, 2003) (Cooper, J.), *aff'd in part, rev'd in part on other grounds*, 108 F. App'x 723 (3d Cir. 2004). This follows from Rule 5(a)(1)(B), under which any "pleading filed after the original complaint" is required to "be served on every party." *See* Fed. R. Civ. P. 5(a)(1)(B); *see also Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 669 (2d Cir. 1977) (holding original complaint not superseded until amended complaint is served as required under Rule 5(a)). Otherwise, the case would be left "in a state of suspended animation in the interim between filing and service of the amended complaint." *Vesco*, 556 F.2d at 669.

ATL filed the Amended Complaint on May 3, 2021, but such filing did not effect service on Defendants because Defendants had not yet appeared or consented to use of the Court's electronic filing system. *See* Dkt. Nos. 12 and 15 (Defendants' counsel's initial notice of appearance being entered after the Amended Complaint); Loc. Civ. R. 5.2(14)(b)(1) (electronic filing constitutes service only on "ECF Filing Users"). Further, ATL's Amended Complaint was not accompanied by any certificate of service as required by the Local Civil Rules. *See* Loc. Civ. R. 5.2(14)(b)(1) ("A certificate of service must be included with all documents filed electronically . . . indicat[ing] how service was accomplished . . ."). Because Defendants had not yet been served with the Amended Complaint, the Original Complaint remained in effect, and Defendants properly filed their Original Motion to Dismiss on May 3, 2021. *See* Dkt. No. 16.

On May 25, 2020, ATL purported to serve Defendants via MCA, *see* Dkt. Nos. 36, 37, and via counsel by email, *see* Declaration of Erik Shallman ("Shallman Decl.") ¶ 3. At that time, the "amended complaint supersede[d] the original and render[ed] it of no legal effect." *W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (internal quotation marks omitted). It also "rendered moot [Defendants'] motion[] to dismiss," such that "no motion[] to dismiss [was] properly pending," thus necessitating Defendants' refiling, that is, this Motion to

US 8038286

Dismiss the Amended Complaint. *See Merritt v. Fogel*, 349 F. App'x 742, 745 (3d Cir. 2009).

**B.  Pursuant to 28 U.S.C. § 2201 and Equitable Exceptions to the First-to-File Rule, the Court Should Decline To Exercise Jurisdiction Over This Inappropriate, Anticipatory Declaratory Judgment Action.**

The Declaratory Judgment Act provides that in a case of actual controversy, a court **may** grant declaratory relief. *See* 28 U.S.C. § 2201(a) ("In a case of actual controversy . . . any court of the United States, upon the filing of an appropriate pleading, **may** declare the rights and other legal relations of any interested party . . . .") (emphasis added). The Court has "broad discretion to refuse to entertain a declaratory judgment action." *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1361-62 (Fed. Cir. 2020) (citing *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813-14 (Fed. Cir. 1996)).

Where, as here, "the issue is whether a suit for declaration of patent rights should yield to a later-filed infringement suit, the trial court's discretion is guided by the first-to-file rule, 'whereby the forum of the first-filed case is favored.'" *Id.* at 1362 (citing *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)). But "[e]xceptions [to the first-to-file rule] . . . **are not rare**, and are made when justice or expediency requires." *Genentech*, 998 F.2d at 937 (emphasis added). Multiple reasons in this case dictate departing from the first-to-file approach.

Among the key considerations for the Court is "a party's intention to preempt another's infringement suit," *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008), as ATL attempted with this action. "The convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, possibility of consolidation with related litigation, or considerations relating to the interest of justice must be evaluated to ensure the case receives attention in the most appropriate forum." *Id.* at 904-05. Thus, "[w]hen one of two

US 8038286

competing suits in a first-to-file analysis is a declaratory judgment action, district courts enjoy a 'double dose' of discretion: discretion to decline to exercise jurisdiction over a declaratory judgment action **and** discretion when considering and applying the first-to-file rule and its equitable exceptions." *Commc'ns Test Design*, 952 F.3d at 1362 (alteration in original).

Here, for the reasons stated below, the Court should decline to exercise jurisdiction and dismiss ATL's improper anticipatory declaratory judgment action.

### 1. ATL's Action Does Not Serve the Objectives of the Declaratory Judgement Act and is a Classic Anticipatory Suit Designed to Deny Defendants their Choice of Forum.

"[T]he purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987). If "a party's intention [is] to preempt another's infringement suit," as is true with ATL's action, this should be considered in "ruling on the dismissal of a declaratory action." *Micron*, 518 F.3d at 904.

Here, there was no "uncertainty and delay" regarding ATL's rights. ATL was on notice that Defendants considered ATL an infringer and intended to file suit on or about April 9, 2021. Armed with this concrete and specific knowledge that suit was imminent, ATL chose to attempt to preempt Defendants' suit with this one, a mere three days before Defendants' stated deadline, to deny Defendants' choice of forum and substitute its own. *See supra* Sections II.C, II.D. Indeed, ATL admits as much—stating it believed that "Defendants could **imminently** file an action against ATL" if no agreement was reached by April 9, 2021. Am. Compl. ¶¶ 27, 28 (emphasis added); *see also* Dkt. No. 7-1 at 2; Dkt. No. 7-3 at ¶¶ 15, 16.

This is "the definition of an anticipatory suit, a type of forum-shopping," which courts consider indicative of bad faith. *See Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*, 669 F. Supp. 2d 613, 623 (W.D. Pa. 2009). "A suit is 'anticipatory' for the purposes of being an exception

to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent." *Id.* (internal citations omitted). "When both parties have taken apparently irreconcilable points of view . . . and one has advised the other that it will file[] suit on a specific date, a pre-emptory filing of a declaratory judgment action is generally considered to have been undertaken in bad faith." *Id.* at 624 (internal citations omitted). ATL's suit illustrates precisely this type of bad faith.

As such, the "declaratory judgment action filed by [ATL] does not spring from circumstances even remotely resembling those contemplated by the Declaratory Judgment Act." *One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc.*, 987 F. Supp. 317, 330 (D.N.J. 1997). ATL should not be rewarded for its gamesmanship, as the anticipatory nature of ATL's suit strongly supports a departure from the first-to-file rule.

### 2. ATL Interfered With Ongoing Negotiations By Feigning Cooperation.

In evaluating the application of the first-to-file rule, the Federal Circuit has recognized that "[i]nterference with ongoing negotiations provide[s] another sound reason that would make it unjust to exercise jurisdiction over the declaratory judgment action." *Commc'ns Test Design*, 952 F.3d at 1364 (internal quotation marks omitted). District courts "may take into account the pendency of serious negotiations to sell or license a patent in determining to exercise jurisdiction over a declaratory judgment action." *Id.* (quoting *EMC Corp.*, 89 F.3d at 814). Here, Defendants and ATL were still negotiating towards a potential license when ATL filed its declaratory judgment action. Indeed, counsel for the parties exchanged emails about a meeting both the day before and the day of ATL's Original Complaint. *See supra* Section II.C.

The facts here closely parallel those considered by the Federal Circuit in *Communications Test Design*, in which the court upheld a district court's finding that the declaratory judgment plaintiff interfered with negotiations by filing its anticipatory suit. *See* 952 F.3d at 1364-65. In

12

that case, the patent owner Contec set a deadline for negotiations, and "[w]hen that deadline arrived, CTDI indicated to Contec . . . that it was willing to engage in licensing discussions." *Id.* at 1363. Defendants here followed the same path. ATL, in response—as in *Communications Test Design*—"expressly agreed to have further licensing discussions the following week, thereby ensuring that [Defendants] would refrain from filing its complaint." *Id.* at 1364. But instead, CTDI filed its declaratory judgment action days later. *See id.* at 1363. ATL did the same.

The district court found that "CTDI took advantage of the fact that Contec deferred filing its complaint based on Contec's reasonable belief that licensing discussions were taking place in earnest, with the obvious hope that litigation would not be necessary." *Id.* at 1364. On appeal, the Federal Circuit affirmed the conclusion that "CTDI's conduct was 'inconsistent with the policy promoting extrajudicial dispute resolution, not to mention sound judicial administration and the conservation of judicial resources.'" *Id.* at 1365.

Defendants took ATL at its word when it re-opened the door to negotiation after Defendants' March 26, 2021 letter; ATL expressly requested another meeting and committed to sending Defendants additional materials for their consideration. *See supra* Section II.C. However, ATL was secretly stringing Defendants along, by suggesting it would continue negotiating, only to buy time and file this case. *Id.* While ATL had "every right, in its business and legal judgment, to break off negotiations and resort to litigation," it did not have the right to "string [Defendants] along just long enough to get the judicial drop and file this lawsuit in its [preferred forum]." *Commc'ns Test Design*, 952 F.3d at 1364 (internal quotation marks omitted).

ATL's anticipatory suit should thus be dismissed for the additional reason of ATL's intentional and misleading interference with the parties' ongoing negotiations.

US 8038286

**3.** 

For example, in each of ATL's four counts, ATL makes reference to "a claim chart purporting to demonstrate how each and every element of claim 1 of the [patent] is met by ATL's Accused Products and accusing ATL's customers of infringement." Am. Compl. ¶¶ 33, 40, 47, 54.

Declining jurisdiction over this action would thus further the interests of justice in ████████████████████████████████████████████████, providing another sound reason to depart from the first-to-file-rule. *See Pittsburgh Logistics*, 669 F. Supp. 2d at 621-622 (finding "bad faith," "inequitable conduct," and "deceptive gamesmanship" as factors that "may constitute special circumstances allowing the second-filed suit to proceed").

### 4. Correcting the Procedural Deficiencies in ATL's Action Will Cause Unnecessary Delay.

As discussed in Section III.D below, ATL's declaratory judgment action is procedurally deficient because ATL has not yet properly served process on either Defendant. Because

14

US 8038286

Defendants are Japanese corporations with no agent for service in New Jersey, absent Court order, ATL must seek service through the Hague Service Convention. *See infra* Section III.D. This procedure is not immediate and may take several months. *See* Preston Decl. ¶ 15. Essentially admitting its own procedural deficiency, ATL moved this Court for alternative service, seeking to short cut the Hague Service Convention and correct its error. *See* Dkt. No. 10. But even if the Court allows ATL to cure its failure through compliance with the Hague Service Convention or alternative service, there will be additional delay in resolving the parties' dispute. Conversely, Maxell Holdings has already complied with the Hague Service Convention in the Texas Action and properly served ATL with process in Hong Kong. *See* Preston Decl. ¶ 14; *see also* Texas Action, Dkt. No. 6 at 4-5 (describing service in Hong Kong).

Thus, declining jurisdiction over this action in favor of the Texas Action will eliminate additional procedural challenges and promote overall efficiency, providing another sound reason to depart from the first-to-file rule. *See Genentech*, 998 F.2d at 938 (the first-to-file approach may yield if there is "sound reason that would make it . . . inefficient to continue the first-filed action").

**5.  The Convenience Factors and the Interests of Judicial Efficiency Favor the Western District of Texas.**

Additional factors courts consider in departing from the first-to-file rule include "[t]he convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, possibility of consolidation with related litigation, or considerations relating to the interest of justice." *Micron*, 518 F.3d at 904-05. Here, these factors favor dismissal of ATL's anticipatory declaratory judgment action in favor of the Texas Action.

**a.  New Jersey Has No Connection to This Case.**

No part of the actions giving rise to this dispute occurred in New Jersey or involved New Jersey residents. *See supra* Sections II.B, II.C. The only connection to New Jersey even alleged

15

by ATL is that Defendants' subsidiary, MCA, is headquartered in New Jersey.[1]  But MCA is a separate corporate entity that has nothing to do with the patent dispute between Defendants and ATL—it had nothing to do with the invention or development of the Maxell LIB Patents, has no ownership of or interest in the Maxell LIB Patents, has no part in the enforcement or defense of the Maxell LIB Patents, took no part in the negotiations between Defendants and ATL, and has no information relevant to the question of whether ATL infringes any of the Maxell LIB Patents.  *See supra* Section II.A.2.  ATL has alleged no facts, and Defendants are not aware of any, suggesting that ATL has any employees or place of business in New Jersey.  Thus, there are no witnesses or documents in New Jersey relevant to this action.  And nothing suggests that New Jersey is a more convenient forum for Defendants or ATL than any other district.

**b.  Texas Is a More Convenient Forum than New Jersey.**

Conversely, Defendants have relevant contacts in Texas.  As described above in Section II.A.3, Texas is of strategic importance to Maxell—since 2014, Maxell has had regular and continuous business in Texas through its joint venture with a Texas company and its Marshall, Texas-based research and development affiliate, MRDA.  *See supra* Section II.A.3.  MRDA's ongoing research and development includes projects implementing LIB technology (some involving inventions embodied by the Maxell LIB Patents), which Maxell hopes will be utilized in various devices in the future.  *Id.*  Prior to the pandemic, Maxell employees regularly traveled

---

[1] ATL also suggests that Defendants have initiated "significant and active litigation . . . in this District," including "recently filing and continuing to litigate a patent infringement case in an unrelated case in this District," *see* Am. Compl. ¶ 17, but Defendants have never filed a patent infringement action in this District.  ATL apparently refers to *Mondis Technology Ltd. v. LG Electronics Inc. et al.*, No. 2:15-cv-04431-SRC-CLW (D.N.J. filed June 21, 2014), but Defendants did not file that suit.  *Mondis* was filed by Mondis Technology Ltd. in the Eastern District of Texas.  *See id.* Dkt. No. 1.  It was transferred to this District at the request of the *Mondis* defendants.  *Id.* Dkt. No. 56.  Defendants were subsequently pulled into the case involuntarily as a required party under Fed. R. Civ. P. 19, at Mondis's request.  *See, e.g.*, *id.* Dkt. No. 369 at ¶ 1.  Defendants are not involved in the running of the case and are thus "plaintiffs" in name only.

16

to Marshall to meet with MRDA employees and partners, and to expand the activities, business, and investments being made by Maxell, MRDA, and their partners in Texas. *Id.*

The Western District of Texas is also a more convenient forum specifically for efficiently resolving this dispute. Handling this dispute there would relieve congestion and promote efficiency; the Western District of Texas generally handles less than a third of the cases of this District. *See* Dkt. No. 16-7 at 1, 2. And there would likely be a significantly faster time to trial— the median time to trial in this District is 33.6 months, *id.,* and the assigned judge in the Texas Action, Judge Albright, sets out an "Order Governing Proceedings – Patent Case" with a default schedule setting trial approximately 18 months from the Case Management Conference, *see* Dkt. No. 16-8 at 6-8. Further, judicial economy favors proceeding with the Texas Action, as opposed to this case, because ATL has not properly served Defendants in this case, *see infra* Section III.D, while Defendants have already served ATL in the Texas Action, *see* Preston Decl. ¶ 14. Thus, it is likely that the parties will be well into the Texas Action before Defendants are properly served in this case. *See supra* Section III.B.4; *see also One World Botanicals*, 987 F. Supp. at 328-29 (considering the extent to which cases have developed).

On balance, the Western District of Texas is a more convenient forum for this dispute than this District, which is inconvenient for all parties, providing an additional reason to depart from the first-to-file rule.

Accordingly, for the above-stated reasons, Defendants respectfully request that the Court decline to exercise jurisdiction over ATL's inappropriate, anticipatory declaratory judgment action and dismiss ATL's Amended Complaint.

## C. Pursuant to Rule 12(b)(2), This Court Should Dismiss for Lack of Personal Jurisdiction Over Defendants.

"When personal jurisdiction is challenged, . . . the plaintiff has the burden of showing that

US 8038286

jurisdiction exists." *Iowa State Univ. Rsch. Found., Inc. v. Greater Continents Inc.*, 81 F. App'x 344, 349 (Fed. Cir. 2003). Nothing in ATL's nine conclusory paragraphs on personal jurisdiction approaches meeting its burden, and the Court should thus dismiss this action under Rule 12(b)(2).

Personal jurisdiction in actions seeking declaratory judgment of non-infringement is governed by Federal Circuit law. *See Maxchief Invs. Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1137 (Fed. Cir. 2018). "Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). "New Jersey's long-arm statute . . . allows a [New Jersey state] court to exercise personal jurisdiction over non-resident defendants to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment . . . ." *Nicholas v. Saul Stone & Co. LLC*, 224 F.3d 179, 184 (3d Cir. 2000) (internal quotations omitted). Thus, "the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *Autogenomics*, 566 F.3d at 1017 (internal quotations omitted).

"[T]he paradigm forum for the exercise of general jurisdiction . . . for a corporation [is the place] in which the corporation is fairly regarded as at home." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "In order for a . . . court to exercise specific jurisdiction, 'the **suit**' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)) (alterations in original). Here, this Court lacks both types of personal jurisdiction.

**1.  This Court Lacks General Jurisdiction Over Defendants.**

To exercise general jurisdiction, a defendant's contacts with the forum must be "so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG*

*v. Bauman*, 571 U.S. 117, 127 (2014). For a corporation, the place of incorporation and principal

place of business are "paradig[m] . . . bases for general jurisdiction." *Id.* at 137 (citations omitted)

(alteration in original). Generally, "it is 'incredibly difficult to establish general jurisdiction [over

a corporation] in a forum **other** than the place of incorporation or principal place of business.'"

*Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 564 (3d Cir. 2017) (internal citations omitted)

(alterations in original).

      a.   **Defendants Are Not "At Home" in New Jersey.**

Defendants are Japanese corporations with principal places of business in Japan. *See supra*

Section II.A.1. Defendants are not incorporated or registered to do business in New Jersey, have

no offices in New Jersey, do not own or lease any real property in New Jersey, do not maintain

bank accounts in New Jersey, and do not pay taxes in New Jersey. *Id.*

ATL's conclusory allegations in its Amended Complaint generically allege that Defendants

do business in New Jersey. *See* Am. Compl. ¶¶ 16-18. Even if those allegations are true, which

they are not, simply "doing business" does not, on its own, rise to the level of being "at home."

*See Daimler*, 571 U.S. at 139 n.20 (noting that "at home" is not synonymous with "doing

business"). ATL's allegations simply fall far short of describing "continuous and systematic"

contacts overcoming Defendants' lack of nexus to New Jersey and render Defendants "at home."

Grasping at straws, the Amended Complaint makes much of Defendants' supposed patent

infringement actions in this District, but this is both misleading and inconsequential to a general

jurisdiction analysis. First, there is only one such case in this District, *Mondis*, in which

Defendants are "plaintiffs" in name only. *See supra* Section III.B.5.a n.1. Second, even if

Defendants had pending patent litigations in this District, "familiarity with the court system of

[New Jersey] is insufficient to render a defendant at home here, as envisioned by *Daimler*." *See*

*AstraZeneca AB v. Mylan Pharms., Inc.*, 72 F. Supp. 3d 549, 554-55 (D. Del. 2014), *aff'd sub nom.*

19

*Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*, 817 F.3d 755 (Fed. Cir. 2016) (finding the initiation of six lawsuits and defense of "many more" insufficient to render defendant "at home").

### b.  MCA's Place of Incorporation, Principal Place of Business, and Contacts Cannot Be Imputed to Defendants Because MCA Is Not Their Alter Ego or Agent.

ATL's Amended Complaint appears to suggest that Defendants may be sued in New Jersey simply because their subsidiary, MCA, is incorporated and headquartered in New Jersey. *See, e.g.*, Am. Compl. ¶¶ 17, 21-22. This completely ignores that Defendants and MCA are separate corporate entities. *See supra* Section II.A.2. "It is well-established in New Jersey that the forum contacts of a subsidiary corporation will not be imputed to a parent corporation for jurisdictional purposes without a showing of something more than mere ownership." *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 609 (D.N.J. 2004). That is, to impute MCA's contacts to Defendants for purposes of jurisdiction, MCA must be an alter ego or agent of Defendants. *See Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1379 (Fed. Cir. 2015).

"Because the alter ego issue is not unique to patent law, this court applies the law of the regional circuit." *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1380 (Fed. Cir. 2004). "In New Jersey, a subsidiary will be deemed to be the alter ego or 'mere instrumentality' of its parent if 'the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent.'" *Horowitz v. AT&T Inc.*, No. 3:17-CV-4827-BRM-LHG, 2018 WL 1942525, at *8 (D.N.J. Apr. 25, 2018) (citations omitted). Liability generally requires that the parent corporation "abused the privilege of incorporation by using the subsidiary to perpetuate a fraud or injustice, or otherwise to circumvent the law." *Pat. Incentives, Inc. v. Seiko Epson Corp.*, No. CIV.A. 88-1407, 1988 WL 92460, at *6 (D.N.J. Sept. 6, 1988), *aff'd*, 878 F.2d 1446 (Fed. Cir. 1989).

To determine if a subsidiary is acting as an agent of the parent, courts consider:

US 8038286

"(1) whether the subsidiary is doing business in the forum that would otherwise be performed by the parent; (2) whether there is common ownership of the parent and subsidiary; (3) whether there is financial dependency; and (4) whether the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls the subsidiary's marketing and operational policies." *See Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 513 (D.N.J. 2008) (internal citations and quotations omitted). Here, MCA is neither an agent nor an alter ego of Defendants.

### i.    ATL Alleges No Facts Regarding the Relationship Between MCA and Defendants that Support an Alter Ego or Agency Theory.

ATL alleges that MCA is the headquarters for Defendants' U.S. operations, that MCA is an "agent," "wholly-owned U.S. subsidiary," and "corporate headquarters for North America" of Defendants, and that Defendants "ha[ve] and continue[] to conduct substantial business with and through [MCA]." Am. Compl. ¶¶ 17, 21-22. These are textbook conclusory allegations that provide no support for an alter ego or agency theory of personal jurisdiction:

> Here, the Complaint provides no facts to support its alter ego theory. For example, Plaintiffs do not provide any facts alleging joint decision-making, shared corporate structure, or "whether the independence of the separate corporate entities were disregarded." Plaintiffs' allegations are merely conclusory. Therefore, the Court denies Plaintiffs' alter ego theory . . . .

*Levy v. Jaguar Land Rover N. Am., LLC.*, No. CV 19-13497, 2020 WL 563637, at *5 (D.N.J. Feb. 4, 2020) (internal citations omitted). ATL has included no allegations whatsoever to suggest that Defendants exercise **any** control over MCA, let alone "dominate" MCA such that it has no separate existence or that Defendants abused the corporate formalities in order to "perpetrate a fraud or injustice." *Pat. Incentives*, 1988 WL 92460, at *6. Because ATL has failed to allege any facts to actually support an alter ego theory, MCA's contacts may not be imputed to Defendants for purposes of jurisdiction.

21

### ii.  MCA Is a Separate Corporate Entity from Defendants.

ATL **cannot** allege such facts because, as described in in Section II.A.2 above, MCA is a separate corporate entity from Defendants, and is neither an alter ego nor an agent of Defendants. MCA has separate corporate formation documents and bylaws from either of Defendants; separate headquarters from Defendants; and separate corporate records, financial accounts, and accounting systems.  *Id.*  MCA pays its own payroll and corporate taxes; is financially independent from Defendants; manages its own day-to-day activities; and is not an agent of Defendants for service of legal documents.  *Id.*  No aspect of the corporate relationship between Defendants and MCA suggests any improper "fraud or injustice" that would justify piercing the corporate veil.

For the reasons stated above, this Court lacks general jurisdiction over Defendants.

### 2.  This Court Lacks Specific Jurisdiction Over Defendants Because ATL Has Not Alleged a Single Relevant Contact in this District.

For specific jurisdiction, the Federal Circuit "ha[s] summarized the Supreme Court's due process jurisprudence in a three-factor test: '(1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair."'"  *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017) (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)).  "The plaintiff bears the burden as to the first two requirements . . . ."  *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 1000 (Fed. Cir. 2018).

Regarding factor (2), "[a] declaratory judgment claim arises out of the patentee's contacts with the forum state **only if** those contacts 'relate in some material way to the **enforcement or the defense of the patent**.'  Accordingly, in this context the minimum contacts prong requires some **enforcement activity in the forum state by the patentee**."  *Maxchief*, 909 F.3d at 1138 (quoting

*Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1336 (Fed. Cir. 2008)) (emphases added).  But here, ATL has failed to allege a single relevant contact.[2]

### a.  ATL States That "A Substantial Part of the Events Giving Rise to the Claims in this Action Occurred in this District" but Alleges No Facts in Support.

ATL states that "a substantial part of the events giving rise to the claims in this action occurred in this District."  Am. Compl. ¶ 21.  But the only "events" that ATL actually alleges are: (1) contact between Defendants and ATL in March 2020, *id.* ¶ 25; (2) discussions between Defendants and ATL from May 2020 to February 2021, *id.* ¶ 26; (3) correspondence between Defendants and ATL on March 26, 2021, *id.* ¶ 27, 29; and (4) Defendants' provision to ATL of "claim charts," *id.* ¶¶ 33, 40, 47, 54.  The Amended Complaint is conspicuously silent as to where these "events" took place, likely because not one took place in New Jersey.  All correspondence between Defendants and ATL was sent from Defendants' counsel in Austin, Texas, to ATL in Hong Kong.  *See supra* Sections II.B, II.C.  The videoconference meetings between Defendants and ATL included representatives of Defendants attending from Japan, representatives of ATL attending from Hong Kong or other locations in China, and counsel for the parties attending from Texas, Nevada, and California.  *See supra* Sections II.B.2.

In all its conclusory allegations, ATL has not identified a single New Jersey contact that "relate[s] in some material way to the enforcement or the defense of the patent"—because there are none.  *Maxchief*, 909 F.3d at 1138.  The Court may thus disregard ATL's allegations.

### b.  Most Contacts Alleged by ATL Generically Involve "Doing Business" in New Jersey and Have No Relation to Enforcement of the Maxell LIB Patents.

Most of the allegations ATL makes in its Amended Complaint amount to no more than an

---

[2] Defendants note that MCA's contacts cannot be imputed to Defendants.  *See* Section III.C.1.b.  Even if they could, ATL has not alleged a single MCA contact that "relate[s] in some material way to the enforcement or the defense of the [Maxell LIB Patents]."  *See Maxchief*, 909 F.3d at 1138.

23

assertion that Defendants do business in New Jersey, directly or indirectly. *See* Am. Compl. ¶¶ 16-19, 21. But as above, these conclusory allegations make no effort to allege how Defendants' business has anything at all to do with events giving rise to this action or "relate[s] in some material way to the enforcement or the defense of" the Maxell LIB Patents. *Maxchief*, 909 F.3d at 1138. They should thus be disregarded.

### c. Patent Litigation Regarding Non-Maxell LIB Patents is Irrelevant to the Specific Jurisdiction Analysis in this Case.

ATL alleges that Defendants have initiated "significant and active litigation . . . in this District," including "recently filing and continuing to litigate a patent infringement case in an **unrelated case** in this District." Am. Compl. ¶ 17 (emphasis added); *see also id.* ¶ 18 (noting Defendants "litigating patent infringement actions in this District"). This is simply untrue. Defendants have never filed a patent infringement suit in this District. *See supra* Section III.C.1.a. Prior to this action, the only patent litigation in this District in which Defendants have been involved was *Mondis*, but, as ATL admits, *Mondis* is entirely **unrelated** to this action. Am. Compl. ¶ 17. *Mondis* involves a completely different patent directed to completely different technology that is assigned to a completely different entity. *See, e.g.*, *Mondis*, No. 2:15-cv-04431-SRC-CLW, Dkt. No. 403 at ¶¶ 12 (describing a display unit patent), 13-14 (describing how Defendants' predecessor assigned the relevant patent to Mondis). The Federal Circuit has "(appropriately) rejected the existence of contacts concerning **other patents** as being pertinent to the minimum contacts analysis." *Xilinx*, 848 F.3d at 1353 (emphasis added). The relevant inquiry here is whether there exist any contacts regarding the enforcement or defense of the **Maxell LIB Patents**. *Mondis* does not relate at all to these patents. ATL's allegations regarding Defendants' litigation activity are therefore irrelevant to whether the Court may exercise specific personal jurisdiction over Defendants in this case.

24

US 8038286

### d. Merely Licensing Patents and Collecting Royalties Does Not Create Specific Jurisdiction.

As an initial matter, Defendants do not collect any licensing revenue from New Jersey specific to the Maxell LIB Patents, Maxell Decl. ¶ 39, rendering ATL's allegation that Defendants "deriv[e] substantial revenue from licensing [their] patents and from goods and services provided to individuals in New Jersey and in this District," Am. Compl. ¶ 17, false and purely conjecture. ATL further fails to allege any detail at all regarding its unsupported claim, including any identification or description of the alleged revenue, licenses, patents, goods, or services. Importantly, ATL does not specifically allege that Defendants licensed or collected revenue on the **Maxell LIB Patents**. ATL also fails to allege whether those licenses were exclusive, or whether Defendants exert any sort of control over its alleged licensees.

These failures are critical. ATL has not alleged any activity specific to the **Maxell LIB Patents**, and therefore those alleged contacts are irrelevant. *See Avocent*, 552 F.3d at 1338 ("[T]he only contacts . . . that are relevant are those that relate in some material way to the enforcement or defense of the patents at issue."); *Xilinx*, 848 F.3d at 1353 (confirming it is appropriate to reject contacts not related to the asserted patent). Even if Defendants had licensed the Maxell LIB Patents to multiple non-exclusive licensees in New Jersey, they "may not be subjected to personal jurisdiction if [Defendants] . . . do[] not, for example, exercise control over the licensees' sales activities and, instead, ha[ve] no dealings with those licensees beyond the receipt of royalty income." *Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006). Therefore, even if ATL's conclusory allegations are taken as true, which they are not, they are insufficient to create specific jurisdiction over Defendants because they fail to allege anything beyond mere licensing and collection of royalties.

In summary, ATL has not alleged a single relevant contact of Defendants that involves

US 8038286

New Jersey and "relate[s] in some material way to the enforcement or the defense of the patent." *Maxchief*, 909 F.3d at 1138. ATL has thus failed to satisfy its burden of showing that its declaratory judgment claims "'arise[] out of or relate[] to' [Defendants'] activities with the forum" *Xilinx*, 848 F.3d at 1353. As such, this Court lacks specific jurisdiction over Defendants.

Because ATL has failed to demonstrate that the Court can exercise either general jurisdiction or specific jurisdiction over Defendants, this action should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.

### D. Pursuant to Rule 12(b)(5), ATL's Attempted Service of Process on Defendants was Ineffective.

Despite acknowledging that both Defendants are Japanese corporations, ATL made no effort to serve either Defendant directly with either the Original or Amended Complaint, but instead attempted to serve process on both Defendants at MCA's offices in New Jersey by addressing the summons "c/o Maxell Corporation of America." *See* Dkt. Nos. 5, 6, 36, 37. But "service of process on a domestic subsidiary of a foreign corporation does not satisfy service on the foreign corporation." *Reddy v. MedQuist, Inc.*, No. CIV 06-4410(RBK/AMD), 2009 WL 2413673, at *7 (D.N.J. Aug. 4, 2009). "Under New Jersey law, service on a wholly owned subsidiary confers jurisdiction over the foreign parent **only if** the subsidiary is an **alter ego or agent** of the parent." *Dewey*, 558 F. Supp. 2d at 513 (emphases added). "[T]he party asserting the validity of service bears the burden of proof on that issue." *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 392 (D.N.J. 2019) (quoting *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993)).

As discussed in Section III.C.1.b above, MCA is not an agent or alter ego of either Defendant under New Jersey law. Although ATL suggests in oblique and conclusory language that MCA is an "agent" of Defendants, *see* Am. Compl. ¶¶ 18, 21, ATL has alleged no facts to

suggest that Defendants exercise **any** control over MCA, which should be fatal to ATL's attempt to serve Defendants through MCA. *See Cephalon, Inc. v. Sun Pharm. Indus., Inc.*, No. CIV.A. 11-5474, 2011 WL 6130416, at *4 (D.N.J. Dec. 7, 2011) (holding that service on New Jersey subsidiary insufficient for service on parent corporation where plaintiff did not provide affidavit demonstrating control over subsidiary).

Thus, ATL's attempted service was ineffective because MCA is not an alter ego or agent of Defendants. Instead, ATL should have served the foreign Defendants under "Rule 4(f), which requires that service be made in the manner prescribed by the Hague [Service] Convention or by foreign law." *See J & H Int'l v. Karaca Zucciye Tic. San A.S.*, No. 2:10-CV-03975 SDW, 2012 WL 4742176, at *3 (D.N.J. Oct. 3, 2012). Defendants therefore respectfully request that the Court dismiss the Amended Complaint under Rule 12(b)(5). *Id.*

### E. In the Alternative, the Court Should Transfer this Action to the Western District of Texas Pursuant to 28 U.S.C. § 1404(a).

As discussed above, this action should be dismissed. However, Defendants move in the alternative for the Court to transfer this action to the Western District of Texas to join the Texas Action, if the Court determines that transfer rather than dismissal would be in the interest of justice.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other civil district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. 1404(a). In ruling on a motion to transfer pursuant to Section 1404(a), courts "apply the law of the regional circuit, in this case the Third Circuit." *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1222-23 (Fed. Cir. 2011). "[S]ection 1404(a) was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F. 3d 873, 883 (3d.

27

Cir. 1995). When conducting the transfer analysis, a court first determines whether venue would be proper in the transferee district, then, if venue is proper, the court conducts a balancing test, determining if the interests of justice and convenience of parties favor transfer. *See id.* at 879-80. "While there is no definitive formula or list of the factors to consider, . . . courts have considered many variants of the private and public interests protected by the language of § 1404(a)." *Id.* at 879 (internal citations omitted).

Here, for many of the same reasons explained above in Section III.B, it is in the interest of justice for this Court to transfer ATL's anticipatory declaratory judgment action to the Western District of Texas to join the Texas Action.

## 1. Venue Is Proper in the Western District of Texas.

Venue is proper in the Western District of Texas under 28 U.S.C. § 1391(c)(3) because neither Defendants nor ATL is a resident of the United States, and thus may be sued in any judicial district. *See In re HTC Corp.*, 889 F.3d 1349, 1361 (Fed. Cir. 2018).

## 2. The Balance of the Relevant Public and Private Factors Favors Transfer to the Western District of Texas.

### a. The Private Factors Weigh in Favor of Transfer.

In determining whether the private factors favor transfer, the Court should consider: (1) the plaintiff's choice of forum; (2) defendant's choice of forum; (3) convenience of the parties as indicated by their relative physical and financial condition; and (4) whether the claim arose elsewhere. *See Jumara*, 55 F.3d at 879 (summarized and reordered, irrelevant factors excluded).

When considering the first two factors, "[a]n additional factor is whether the party instituting the first action (i.e., for declaratory judgment) intended to preempt a later suit (i.e., for infringement) by its adversary" and "the Third Circuit has stated that anticipatory litigation of that nature is disfavored." *One World Botanicals*, 987 F. Supp. at 328, 329. Here, little weight, if any,

should be afforded to ATL's choice of forum because ATL's action was clearly filed in anticipation of Defendants' infringement suit, rendering ATL's choice "disfavored" for purposes of a transfer analysis.  *See supra* Section III.B.1.  Greater weight should thus be afforded to Defendants' choice of forum as shown in the Texas Action.  The third factor regarding convenience of the parties also favors the Western District of Texas, as discussed above in Section III.B.5, including because Maxell's research and development subsidiary, MRDA, is based in Texas.  With regard to factor (4), not a single event giving rise to this action occurred in New Jersey.  *See supra* Sections II.B, II.C, III.C.2.  Therefore, this factor also weighs in favor of transfer.

In all, an analysis of the private factors clearly weighs in favor of transferring this action to the Western District of Texas.

### b.  The Public Interest Factors Also Weigh in Favor of Transfer.

The public interest factors to be considered include: (5) "practical considerations that could make the trial easy, expeditious, or inexpensive;" and (6) the relative administrative difficulty resulting from court congestion.  *Jumara*, 55 F.3d at 879 (irrelevant factors excluded).

For factor (5), there are two major considerations suggesting that litigation in the Western District of Texas would be more practical.  As an initial matter, ATL's action is procedurally deficient:  this Court does not have personal jurisdiction over Defendants and ATL has failed to properly serve either Defendant.  *See supra* Sections III.C, III.D.  The lack of personal jurisdiction cannot be cured, thus rendering this action a nullity.  And while ATL's failure to serve Defendants could be cured through proper service under the Hague Service Convention, this would likely take many months.  *See supra* Section III.B.4.  This case will thus be delayed compared to the Texas Action, which Defendants properly served on ATL in Hong Kong pursuant to the Hague Service Convention.  *See supra* Sections II.D, III.B.5.b.  Even should the Court allow ATL to cure its deficiencies through alternative service pursuant to ATL's recent motion, this action would still

US 8038286

be delayed compared to the Texas Action.  Transferring this case would likely result in a more expeditious resolution of the underlying dispute—ATL's infringement of the Maxell LIB Patents.

Factor (6) is concerned with judicial economy and court congestion.  As discussed in Section III.B.5.b, even when not taking account of ATL's procedural hurdles or Judge Albright's particularly efficient docket, the Western District of Texas has a lower case load and a substantial advantage in median time-to-trial over this District.  In conjunction with the above factors, transfer would ease the congestion of this District and result in a speedier resolution of the dispute.

The relevant private and public interest factors all favor transfer of ATL's declaratory judgment action, and the Court should thus, in the interest of justice, transfer this anticipatory suit to the Western District of Texas to join the Texas Action.

## IV. CONCLUSION

For the foregoing reasons, this Court should grant Defendants' Motion to Dismiss ATL's Amended Complaint under (1) 28 U.S.C. § 2201, as an improper, anticipatory declaratory judgment action; (2) Rule 12(b)(2), for lack of personal jurisdiction; and (3) Rule 12(b)(5), for lack of service of process.  In the alternative, Defendants request that this Court transfer the case to the Western District of Texas, which is the more appropriate forum for this dispute and where the same issues are pending in the Texas Action.

US 8038286

Dated:  June 8, 2021

Respectfully submitted,

*/s/ Robert E. Levy*

Robert E. Levy (local counsel)
rlevy@sh-law.com
SCARINCI HOLLENBECK
1100 Valley Brook Avenue
P.O. Box ;790
Lyndhurst, New Jersey  07071
201.896.4100 Telephone
201.896.8660 Facsimile

Hilary L. Preston (admitted *pro hac vice*)
Texas Bar No. 24062946
hpreston@velaw.com
Jeffrey  T. Han (admitted *pro hac vice*)
Texas Bar No. 24069870
jhan@velaw.com
Erik Shallman (admitted *pro hac vice*)
Texas Bar No. 24113474
eshallman@velaw.com
VINSON & ELKINS LLP
2801 Via Fortuna, Suite 100
Austin, Texas  78746
512.542.8400 Telephone
512.542.8612 Facsimile

Eric J. Klein (admitted *pro hac vice*)
Texas Bar No. 24041258
eklein@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3900
Dallas, Texas  75201
214.220.7700 Telephone
214.220.7716 Facsimile

ATTORNEYS FOR SPECIALLY
APPEARING DEFENDANTS MAXELL,
LTD. AND MAXELL HOLDINGS, LTD.

31