UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**AMPEREX TECHNOLOGY LIMITED,**

    **Plaintiff,**

    v.

**MAXELL, LTD. AND MAXELL HOLDINGS, LTD.,**

    **Defendants.**

Civ. No. 21-08461 (KM) (MF)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

    Maxell, Ltd. and Amperex Technology Limited ("ATL") spent just over a year negotiating for ATL to be a licensee for some of Maxell's patents. No agreement was reached, and shortly after a standstill agreement lapsed, ATL filed this declaratory judgment action (the "DNJ Action"). Two days later, Maxell filed a patent infringement action in the United States District Court for the Western District of Texas, *Maxell Holdings, Ltd. v. Amperex Technology Limited*, 21-cv-347 (ADA) (W.D. Tex.) (the "WDTex Action"). ATL moved to stay the second-filed WDTex Action (DE 7), and also moved for alternative service on Maxell (DE 10). Maxell then moved to dismiss or transfer this action (DE 52). The motion to transfer is **GRANTED** and the motions to enjoin the second-filed action and to dismiss this action are **DENIED**.

### I.   BACKGROUND[1]

    Maxell, a Japanese corporation, and ATL, a Chinese corporation, both make batteries—specifically, the rechargeable lithium-ion batteries (LIBs) that

---

[1]    Certain citations to the record are abbreviated as follows:

    DE = docket entry in this case

    Compl. = Complaint (DE 1)

    Mot. = Maxell's motion to dismiss or transfer (DE 52)

    DNJ Action = The above-captioned case.

are present in a wide variety of products, from cellular phones to drones. At issue in this case and in the WDTex Action are four patents held by Maxell: U.S. Patent Nos. 8,691,446, 9,350,019, 9,077,035, and 9,166,251 (the "LIB patents"). (Compl. ¶ 1.) The first three patents relate to a "[n]onaqueous secondary battery and method of using the same." (Compl. ¶ 30, 37, 44.) The fourth patent relates to a "[b]attery separator and nonaqueous electrolyte battery." (Compl. ¶ 51.)

On March 27, 2020, Maxell contacted ATL to discuss a "mutually beneficial" licensing agreement, in which ATL would pay to license Maxell's LIB patents. (DE 17-2.) The letter did not directly accuse ATL of infringement. In July 2020, the parties entered into a mutual non-disclosure agreement as a prelude to negotiation of a licensing agreement. (DE 19-2.) The non-disclosure agreement was valid for a year from the "effective date" of March 26, 2020, but could be terminated by either party with 60 days' notice. (*Id.*) The non-disclosure agreement included a "litigation standstill" clause in which both parties agreed that during the one-year "disclosure period" they would not directly or indirectly initiate any legal actions against one another. (*Id.*)

As of March 25, 2021, no licensing agreement had been reached. ATL contacted Maxell's counsel and proposed extending the mutual non-disclosure agreement. (DE 57-5.) Maxell did not respond to that proposal, but on March 26, 2021, Maxell sent a letter to ATL stating that a number of ATL's products infringed Maxell's LIB patents. (DE 17-3.) Maxell emphasized that it "remain[ed] willing to resolve this matter amicably and to grant ATL a license to the Maxell LIB Patent Portfolio," but stated bluntly that if "Maxell and ATL are not able to enter into a licensing agreement by Friday, April 9, 2021, Maxell will be left with no choice but to pursue litigation." (*Id.*)

---

WDTex Action = *Maxell Holdings, Ltd. v. Amperex Technology Limited*, 21-cv-347 (ADA) (W.D. Tex.).

WDTex DE = docket entry in the WDTex Action.

After a few days of phone tag, counsel for ATL and Maxell spoke between March 31 and April 5, 2021. (DE 17-5.) On April 5, Maxell's counsel wrote to ATL: "Maxell is open to having another meeting, but they request that you provide the materials in advance so that they can determine whether a written response or live meeting is most appropriate. Can you provide the materials ATL planned to present?" (*Id.*) The next day, ATL's counsel responded, writing "I will be in touch as soon as I can get the materials." (*Id.*)

Just over two hours after ATL's counsel sent that email, ATL filed its ninety-page declaratory judgment complaint in this court (*i.e.*, the DNJ Action).[2] Two days later, Maxell filed its own suit in federal court in the Waco Division of the United States District Court for the Western District of Texas (*i.e.*, the WDTex Action). (*See* DE 7-2.) In the DNJ case, ATL seeks a declaratory judgment that it is not infringing the LIB patents. In the WDTex case, Maxell seeks to prove ATL is infringing the LIB patents. The parties acknowledge that the suits are mirror images.

In the second-filed, WDTex Action, a motion by ATL to dismiss, transfer, or stay is currently pending. (WDTex DE 10.) Judge Albright has ordered jurisdictional discovery in the second-filed action but has paused scheduling of further discovery to permit the parties to determine whether ATL will be able to produce discovery documents under China's new Data Protection Law. (WDTex DE 23.)

Here, in the DNJ Action, ATL has moved to enjoin the second-filed WDTex Action. (DE 7) ATL has also moved for alternative service because Maxell has refused service through its American subsidiary and, in ATL's view, Hague Convention service procedures would be too time consuming. (DE 10)[3]

---

[2]   The email, from an attorney based in San Francisco, is timestamped 5:57 P.M. I assume that timestamp reflects Western Daylight Time. The complaint receipt states that it was received at 11:10 P.M. Eastern Daylight Time.

[3]   ATL has attempted to serve Maxell through its subsidiary, Maxell Corporation of America ("MCA"). (DE 10-1 at 2; DE 5, 6, 36, 37.) Maxell has refused service, arguing that service of process on a domestic subsidiary of a foreign company is improper and

While those motions were pending, on the same date, ATL filed an amended complaint (DE 12), and Maxell filed a motion to dismiss the original complaint (DE 16). Maxell withdrew its motion to dismiss the original complaint in light of the filing of the amended complaint. (DE 55) Thereafter, Maxell filed a motion to dismiss or transfer the amended complaint (DE 52), which is now before the court.

## II.   LEGAL STANDARD

The Declaratory Judgment Act ("DJA") provides in pertinent part, that "[i]n a case of actual controversy within its jurisdiction… any court of the United States… *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2000) (emphasis added). The purpose of a declaratory action is to allow a party "who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." *Capo, Inc. v. Dioptics Med. Prod., Inc.*, 387 F.3d 1352, 1354–55 (Fed. Cir. 2004) (quoting *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed Cir. 1993)).[4] In patent cases, the purpose of the DJA "is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987).

Courts exercise "unique and substantial discretion" in retaining or declining jurisdiction under the DJA. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). "In the declaratory judgment context, the normal principle that

---

that ATL must follow Hague Convention procedures, as Maxell itself did in the second-filed action. (Mot. at 15, 26–27; WDTex DE 6.)

[4]   In conflicts between cases filed under the DJA and later-filed patent infringement cases, Federal Circuit precedent controls because "[t]he proper relationship between an action under this act for a declaration of patent rights and a later-filed infringement suit triggers [the Federal Circuit's] special responsibility to foster national uniformity in patent practice." *Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1038 (Fed. Cir. 1995). *See also Futurewei Techs., Inc. v. Acacia Rsch. Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013).

4

federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288. This discretion, however, "is not plenary" and "[t]here must be well-founded reasons for declining to entertain a declaratory judgment action." *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1361 (Fed. Cir. 2020) (quoting *Capo*, 387 F.3d at 1355). A court cannot "decline to entertain [a declaratory judgment] action as a matter of whim or personal disinclination." *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). Importantly, a court cannot decline to entertain a declaratory suit simply because there is a subsequently filed patent infringement suit in another district. *See Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), abrogated on other grounds by *Wilton*, 515 U.S. 277 (1995). This principle, the "first-to-file rule," is at the heart of this case.

### III. DISCUSSION

#### a. First-to-File Rule

"The 'first-to-file' rule is a doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012) (citing *Genentech*, 998 F.2d at 937–38). The general rule is that the first-filed action is preferred, even if it is declaratory, "unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *Serco*, 51 F.3d at 1039. "[T]rial courts have discretion to make exceptions to this general rule in the interest of justice or expediency," and the Federal Circuit has recognized that such "exceptions are not rare." *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008) (citing *Genentech*, 998 F.2d at 937). Indeed, the Federal Circuit has recently stated that in cases implicating the "first-to-file" rule, District Courts have a "'double dose' of discretion:  discretion to decline to exercise jurisdiction over a declaratory judgment action and discretion when considering and applying the first-to-file rule and its equitable exceptions." *Contec*, 952 F.3d at 1362.

In deciding to depart from the first-to-file rule, I take several factors into account. First, I analyze whether ATL's declaratory action was a bad faith "anticipatory suit" intended to preempt Maxell's patent infringement action. That it was an anticipatory suit is not dispositive, but rather "is merely one factor in the analysis." *Micron*, 518 F.3d at 904. Other relevant factors include "the convenience and availability of witnesses, the absence of jurisdiction over all necessary or desirable parties, and the possibility of consolidation with related litigation." *Id.* at 904–05. The Supreme Court has "cautioned against 'rigid mechanical solution[s]' to questions of forum, stressing the importance of conservation of judicial resources and the comprehensive disposition of litigation." *Genentech*, 998 F.2d at 938 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). In addition, in cases such as this one with competing forum interests, "the trial court needs to consider the 'convenience factors' found in a transfer analysis under 28 U.S.C. § 1404(a)." *Micron*, 518 F.3d at 902–03. I discuss those factors below.

### i. Anticipatory Suit

A declaratory action is an anticipatory suit when it is "designed to preempt [the second filer's] suit and to secure [the first-filer's] own choice of forum instead." *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005). Several district courts have held that a suit is anticipatory if the plaintiff "filed upon receipt of specific, concrete indications that a suit by defendant was imminent." *Z-Line Designs, Inc. v. Bell'O Int'l, LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003) (citing *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994)).[5]

---

[5] There appears to be no Federal Circuit authority on this standard, but it is accepted by both parties (DE 57 at 12; DE 60 at 8–9) and has been employed effectively by a number of district courts. *See, e.g., Kulpinsky v. Innovairre Holding Co., LLC*, 2021 WL 3732876, at *4 (D.N.J. Aug. 24, 2021) (quoting *Samsung Elecs. Am., Inc. v. Grecia*, 2021 WL 978957, at *12 (E.D. Pa. Mar. 15, 2021)); *Nexans Inc. v. Belden Inc.*, 966 F. Supp. 2d 396, 404 (D. Del. 2013); *Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*, 669 F. Supp. 2d 613, 623 (W.D. Pa. 2009) (quoting *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F.Supp.2d 949, 960 (N.D. Cal. 2008)). I therefore adopt that standard for purposes of this opinion.

Whether the declaratory action is an anticipatory suit is merely one factor among many. Nevertheless, it is an important factor that favors departing from the first-to-file rule. What is more, in cases where there is evidence that the first-filing party engaged in bad-faith negotiations to win a "race to the courthouse to seek a forum more convenient and amenable to their legal interests," *Micron*, 518 F.3d at 904, courts have been especially reluctant to give priority to a first-filed declaratory action.

In *Communications Test Design, Inc.* v. *Contec*, the Federal Circuit upheld the dismissal of a declaratory action. 952 F.3d 1356. The facts of *Contec* are quite similar to those of this case. Both Communications Test Design, Inc. ("CTDI") and Contec made technology to diagnose and repair set-top boxes. *Id.* at 1358–59. Contec believed that CTDI's products infringed its patents. The companies spent almost a year in discussions, and in September 2018, Contec sent a letter stating that it had determined that CTDI's products did indeed infringe its patents. *Id.* at 1359. The letter asked if CTDI was willing to license Contec's patent and stated that if CTDI did not agree to license the patent by September 19, 2018, Contec would sue for infringement. *Id.* The letter also included a draft of the proposed patent infringement complaint. *Id.* On September 19, 2018, the two executives spoke by phone and agreed to speak again about licensing on September 24. *Id.* Contec therefore delayed filing the complaint it had prepared. CTDI followed up with a letter stating that "CTDI will consider potential terms as requested in your most recent letter." *Id.* Two days later, on September 21, 2018, CTDI filed a declaratory action in Pennsylvania, and on September 24, it informed Contec that it had done so. *Id.* Three days later, Contec filed its own patent infringement action in New York. *Id.*

The Pennsylvania district court, after examining the timeline of the communications, dismissed CTDI's declaratory action. It found that the suit was an anticipatory suit and that CTDI had misled Contec into believing negotiations were ongoing, so that it could win the race to the courthouse of its

7

choice. *Id.* at 1360. The court found that although CDTI "had every right, in its business and legal judgment, to break off negotiations and resort to litigation," it could not "string Contec along just long enough to get the judicial drop and file this lawsuit in its own backyard." *Id.* What is more, the court held, CTDI's manipulation of ongoing negotiations was "inconsistent with the policy promoting extrajudicial dispute resolution, not to mention sound judicial administration and the conservation of judicial resources." *Id.* at 1365.[6] Other cases have similarly held that when one party gives a deadline by which a dispute must be resolved non-judicially and the other party quickly files a declaratory action, the declaratory suit is anticipatory, even without additional indicia of bad faith. The deadline alone constitutes a specific, concrete indication that suit by the defendant is imminent. *See Pittsburg Logistics Sys., Inc. v. C.R. England, Inc.*, 669 F. Supp. 2d 613, 623 (W.D. Pa. 2009); *FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 744 n.23 (E.D. Pa. 2005) (collecting cases).

      The egregious bad faith present in *Contec*, is not required for a declaratory action to be considered an anticipatory suit. In fact, ongoing negotiations are not required at all, if a concrete threat of legal action is present. In *Beach Sales & Engineering, LLC v. Telebrands, Corp.*, for example, the United States District Court for the Northern District of Ohio transferred a declaratory action without any evidence of bad faith negotiations. 2015 WL 1930337 (N.D. Ohio Apr. 28, 2015). After receiving a cease-and-desist letter from Telebrands, which reserved the right to pursue legal action if Beach Sales did not stop selling the allegedly infringing product by November 17, Beach Sales filed a declaratory action on November 14. Although there was no evidence of bad faith, and although the cease-and-desist letter did not include a draft of a complaint or a firm date for filing suit, the court found that the case was anticipatory. It decided to transfer the action after determining that other

---

[6] The court also analyzed additional factors and found that, on balance, New York was a more convenient forum than Pennsylvania. *Id.*

factors also favored transfer. *Id.* at *3–*4; *see also Serco* 51 F.3d at 1039–40 (Fed. Cir. 1995) (finding that a district court did not abuse its discretion in holding that a declaratory suit filed in response to a cease-and-desist letter was anticipatory); *Raz Imports, Inc. v. Luminara Worldwide, LLC*, at *3 (N.D. Tex. Nov. 3, 2015) (holding that a declaratory suit filed in response to a cease-and-desist letter was anticipatory).

An instructive contrast is furnished by *Activision Publishing Inc. v. Gibson Guitar Corp.*, in which the court declined to transfer Activision's declaratory action. 2008 WL 11338781 (C.D. Cal. May 20, 2008). There, Gibson had sent a letter demanding that Activision license Gibson's patent for its use in Activision's popular Guitar Hero video game. *Id.* at *1. Activision asked for more information, and then declined to pay for a license because it determined that Guitar Hero was not infringing Gibson's patent. Activision filed an action for a declaratory judgment of noninfringement, and Gibson followed quickly with an infringement action. *Id.* The *Activision* court found that the suit was not anticipatory for two reasons. First, it found that the two companies had not engaged in negotiations—Activision had merely rejected Gibson's license demand. Thus, Gibson had not been "lulled" into the "false belief that negotiations were occurring." *Id.* at *3. Second, and more important, was the court's finding that Gibson never "provided any 'specific, concrete indication[ ] that a suit … was imminent." *Id.* at *4 (citing *Z–Line*, 218 F.R.D. at 665). Gibson's letters did not indicate it was preparing to sue, but merely stated that it took the "threat to its intellectual property seriously and is prepared to discuss any reasonable resolution to the matter." *Id.* Activision was therefore free to bring a declaratory action to obtain "relief from uncertainty and delay regarding its legal rights." *Goodyear*, 824 F.2d at 956.

To summarize: a declaratory judgment suit is anticipatory if it is undertaken to preempt a specific, concrete threat of imminent litigation. A concrete threat of litigation need not rise to the level of sending the alleged infringer a draft complaint—although that, of course, may constitute clear

9

evidence that litigation is imminent. Rather, the threat of a patent infringement lawsuit if a certain action is not taken (*e.g.*, cease and desist or agree to purchase a license) by a certain date will suffice. Words to the effect of "We will sue you if you do not license our patent by November 1" are a specific, concrete indication of imminent litigation; "We believe your product may infringe our patent and are anxious to enter discussions to reach a mutually beneficial solution" is not. Ongoing negotiations between the parties are not required for a declaratory judgment action to be considered anticipatory. Nor is evidence of bad faith and gamesmanship. Still, bad faith actions—especially actions that disrupt the non-judicial settlement of disputes or that string the defendant along so that the plaintiff can win the race to the courthouse—do, however, weigh strongly in favor of transfer or dismissal. *See Contec*, 952 F.3d at 1360. In short, there is no need to defer to the plaintiff's choice of forum when the plaintiff deceived the defendant in order to forum shop.

I apply those principles to the facts of this case. Here, ATL's declaratory suit was anticipatory. It was filed in response to Maxell's March 26, 2021, letter, which stated that if "Maxell and ATL are not able to enter into a licensing agreement by Friday, April 9, 2021, Maxell will be left with no choice but to pursue litigation." (DE 17-3.) This suit thus was "filed upon receipt of specific, concrete indications that a suit by defendant was imminent." *Z-Line*, 218 F.R.D. at 665. ATL admits as much in its complaint, writing that it filed the suit not to bring an unresolved situation to a head, but rather to get the jump on an imminent lawsuit: *i.e.*, because ATL "has a reasonable apprehension, and there exists a substantial risk, that Defendants will imminently file an action against ATL and allege that ATL infringes directly and/or indirectly the Maxell LIB Patents." (Compl. ¶ 28).

Inconsistently, ATL attempts to argue that the March 26 letter was *not* a concrete litigation threat because it did not "a) concretely state that [Maxell] would file a complaint on April 9, 2021, let alone indicate a timetable for the litigation, b) indicate where it would file, or c) provide ATL with a draft of the

10

complaint that … it allegedly intended to file on April 9, 2021."⁷ (DE 57 at 10.) As discussed above, none of those factors are necessary. Patentees are not required to share an already-drafted complaint to make a specific, concrete threat of litigation. An objective reading of Maxell's letter makes clear that if a licensing agreement was not reached by April 9, Maxell intended to quickly sue ATL for patent infringement. That is enough for the letter to be considered a concrete threat of imminent litigation. This factor weighs in favor of dismissal or transfer.

Next, there is some evidence of bad faith on ATL's behalf, although it does not rival the facts of *Contec* for egregiousness. As of April 6, 2021, when ATL filed this suit, Maxell was justified in believing that negotiations were ongoing, and thus is justified in arguing that ATL "feign[ed] cooperation." (Mot. at 12.) Although it had made a clear threat of litigation if the licensing agreement was not reached by April 9, the email communications between the companies appeared to show that both were open to continuing negotiations. (DE 17-5.) Mere hours before filing this suit, ATL's counsel stated that he would be in touch when he obtained the materials for their next meeting. (*Id.*) I do not fault counsel for preparing for all contingencies, but this 90-page complaint obviously was not prepared in that two-hour period.

It is true, of course, that ATL's complaint was literally filed first. The time lag between the two complaints, however, was a mere two days, and Maxell's complaint was filed well within the deadline it had set for a negotiated settlement. Maxell, unlike the patentee in *Contec*, did not extend a previous deadline to accommodate ongoing negotiations. But of course it did not have

---

⁷  ATL cites *Elecs. for Imaging*, 394 F.3d at 1347 in support of its contention that "without a concrete indication from Maxell of when it would 'pursue litigation,' there is no preemption." (DE 57 at 12). In that case, however, the court found that the declaratory suit was anticipatory, even though the defendant did not state a concrete date or location for it suit, nor provide a complaint, though the defendant did specify a law firm that would bring the case. *Elecs. for Imaging, Inc.,* 394 F.3d at 1344. The Federal Circuit overturned the dismissal of that case because it found the district court dismissed based only on the anticipatory nature of the suit, without examining other factors. *Id.* at 1348.

11

the opportunity to do so, because ATL preemptively filed this suit in advance of the deadline's expiration. It is ultimately unknowable whether Maxell would have further extended the deadline if negotiations had continued. Like CDTI's actions, however, ATL's actions interfered with the ongoing negotiations and thus were "inconsistent with the policy promoting extrajudicial dispute resolution." *Contec*, 952 F.3d at 1365. This factor also weighs in favor of dismissal or transfer.

## ii. **Other Factors**

That ATL's suit is anticipatory is an important factor, but may not be enough to warrant departure from the first-to-file rule. *See Micron*, 518 F.3d at 904. I therefore analyze other factors relevant to that decision.

First, the convenience and availability of witnesses appears to be a neutral factor. All relevant witnesses apparently reside outside the United States. Neither party appears to directly own or manage facilities in the United States, and there is no evidence that any of the patents have any direct relation to any particular location in the United States. ATL claims that this factor weighs in favor of this court retaining jurisdiction because Maxell's American subsidiary, the Maxell Corporation of America ("MCA") has its headquarters in New Jersey (DE 57 at 17.) There is no assertion, however, that MCA owns or was involved in developing the patents at issue, or that any employee of MCA would potentially testify in this case. MCA primarily buys products from Maxell to distribute in the United States; it does not develop products or technology on its own. (DE 17-10 ¶ 31; DE 17-11.) Maxell, for its part, claims that Texas is a better forum because Maxell has a research and development affiliate based in Marshall, Texas, which works on LIB technology. (Mot. at 5.) Again, however, there is no evidence that any of the patents at issue are associated with the Texas affiliate or that any employees of the affiliate would testify in this case. Both parties in this case are foreign companies, so it is unlikely that either district is significantly more convenient than the other.

Second, the "absence of jurisdiction over all necessary or desirable parties" weighs in favor of transfer. Although there is no evidence that there are

other necessary or desirable parties other than Maxell and ATL, there are serious questions about this court's jurisdiction over Maxell as compared to the Texas court's jurisdiction over ATL. Most importantly, Maxell has not yet been effectively served in this action, whereas ATL has been served in the WDTex Action, which is moving forward. (WDTex DE 6.) In short, the DNJ action was technically filed first—by two days—and promptly became bogged down in service issues, and remains in that status.[8] That ATL has been served in the WDTex Action, and that the WDTex action is moving forward, weighs in favor of transfer or dismissal.

The third factor, the possibility of consolidation with related litigation, also weighs in favor of transfer. If I transferred this case to the Western District of Texas, it would most likely be consolidated with the WDTex Action, saving the parties the cost and difficulty of litigating two cases simultaneously. Of course, enjoining the Texas case would also result in a single pending litigation. For reasons discussed in the next paragraph, however, transfer to Texas is preferable to an injunction.

Finally, the conservation of judicial resources weighs in favor of a transfer or dismissal. Although both this court and the Texas court are capable of adjudicating this case in a timely and efficient manner, the Texas case has reached a more advanced stage. *See Pittsburgh Logistics Sys.*, 669 F. Supp. 2d at 622 (listing "the relative development of the two suits" as a relevant factor). There, jurisdictional discovery has begun, and the parties have begun to grapple with the issue of how China's new Data Protection Law will affect ATL's participation in fact discovery. (WDTex DE 23.) It would be unwise and wasteful to repeat these steps in this forum simply because ATL got a two-day jump by filing its anticipatory suit here.

---

[8] ATL seeks to be excused from the usual requirements of service, arguing that service under the Hague Convention procedures is too cumbersome. Yet it appears that Maxell managed to serve ATL in the WDTex action without resort to substitute procedures.

In short, those factors, added to the fact that this is an anticipatory suit and certain indicia of bad faith, lead me to exercise my discretion to decline jurisdiction over this case. I find that "considerations of judicial and litigant economy, and the just and effective disposition of disputes" require that I depart from the first-to-file rule. *Serco*, 51 F.3d at 1039. As between transfer and dismissal, I believe that transfer is preferable, for reasons explained in the following section.

### b. Transfer

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district or division where it might have been brought. The Supreme Court has stated that "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (cleaned up). Analysis of the transfer factors is governed by regional circuit law. *Micron*, 645 F.3d at 1331. "The burden of establishing the need for transfer … rests with the movant. And in ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (cleaned up).

The Third Circuit has listed a variety of relevant private and public interest factors that I may consider when deciding whether to transfer. Private interest factors include:

> (1) forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted). Public interest factors include:

> (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citations omitted). Some of these factors overlap with the first-to-file rule analysis above and some are not relevant to this case. I will address first the private factors and then the public factors.

The most important factor weighing against transfer is that the plaintiff ATL chose to file this case in this court. Generally, the plaintiff's choice of forum is the "paramount consideration" in the transfer decision. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970); *Kirkwood v. Brenntag N. Am., Inc.*, 2020 WL 1516974, at *3 (D.N.J. Mar. 30, 2020). In this case, however, there are several reasons to discount the importance of ATL's choice of forum. First, as discussed above, ATL chose this forum in an anticipatory suit meant to deny Maxell its choice of forum. *See One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc.*, 987 F. Supp. 317, 328 (D.N.J. 1997). Second, neither party is at home here, and no particular infringement of Maxell's patent is alleged to have taken place in New Jersey. What is more, both parties are foreign companies without strong ties to this forum, undermining the assumption that the plaintiff's choice of forum is most convenient. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (stating that when a plaintiff files a suit outside of its home forum, the presumption that its choice of forum is convenient and appropriate applies with "less force"); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981) (stating that when a plaintiff is foreign, the presumption of favor for its choice of forum is "much less reasonable"). Thus, though ATL's choice of forum weighs against transfer, it does not weigh heavily.

Second, Maxell's forum preference weighs in favor of transfer. If ATL had not filed this anticipatory suit, this litigation would have begun with Maxell as

15

plaintiff in the Western District of Texas, Maxell's chosen forum. The time lag between the two, a matter of two days, suggests as much.

The other private factors are neutral. The claim arose either everywhere in the United States where ATL's accused products are sold, or else in China, where ATL's accused products are designed and manufactured. Neither scenario seems to weigh in favor of any specific venue in the United States. As discussed above, the convenience of parties and witnesses and the location of books and records are not relevant to the transfer analysis; both parties are foreign corporations and all witnesses (as well as books and records, to the very limited extent relevant in an age of electronic record keeping) would naturally be located outside the United States.

The private factors thus weigh in favor of transfer, though not heavily.

The second and third public factors weigh in favor of transfer, and the rest are neutral. As noted above, the Texas case has already advanced farther than this case and thus will likely be resolved more expeditiously. In addition, Maxell points to evidence that civil cases are generally resolved more quickly in the Western District of Texas than in this district (DE 17-6), which has been in judicial emergency status as a result of unfilled vacancies. I am confident, however, that the Western District of Texas has a large docket, and quite enough to do, so I do not lean heavily on this factor.

In short, the public factors weigh somewhat in favor of transfer, as opposed to dismissal.

Thus, I find that it is in the best interests of justice to transfer this case to the Western District of Texas, rather than dismiss the case.

## IV. CONCLUSION

For the reasons set forth above, ATL's motion to enjoin the later-filed WDTex action (DE 7) is DENIED and Maxell's motion to transfer (DE 52) is GRANTED. The motion for alternative service (DE 10) is DENIED as moot, without prejudice to renewal should it remain relevant in the transferee court. A separate order will issue.

Dated: September 27, 2021

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**